State of Illinois, Industrial Commission Division of the Intellect Court is now in session. The Honorable Justice William E. Bolling is presenting. Please be seated. Thank you. Madam Clerk, please call the first case of the afternoon. 152-3432, Doug Holleran v. Workers' Compensation Commission, MD Division. Counsel, you may proceed. May it please the Court, Your Honors, Counsel, my name is Dennis Lynch from Healy Skansen. I represent the Plaintiff Appellant, Doug Holleran. Your Honors, the central issue in this case is whether it was appropriate for the arbitrator to review multiple surveillance videos which were not offered into evidence and were not, and for which no foundation was laid. Is there evidence that the arbitrator did review those videos? The arbitrator ordered that they be produced to her, and then there's nothing else on the record about that fact that was her order that they be reviewed. I think there were some discussions off the record that were not documented. Well, for purposes of the appeal, are we to assume that the arbitrator did review those videos when there isn't direct evidence of it? I think given that the arbitrator ordered that they be produced to her, I think that's fair to extract from the record. Well, there's no legal presumption that we would assume that the arbitrator reviewed them in the absence of specific proof, is there? Well, I think the context that that was her order, and certainly the arbitrator, if her order was not followed, would have made a point of it on the record. I think that gives rise to that being a... Well, in a bench trial before a judge, there's always a presumption that only admissible evidence was considered in a decision. Certainly, but I think this is a different situation where the arbitrator ordered that these other videos be produced for her and that she wanted to be able to review these videos that were not. How is it different than in-camera inspection of evidence to determine whether it is or is not admissible in a trial? I think the difference, Your Honor, is that they were not offered into evidence by either party. Well, if there's an in-camera inspection and the judge determines that they're inadmissible, they won't be offered. But one party or the other gives those documents to the judge or the arbitrator. Those videotapes were also turned over to your client's attorney, too, weren't they? Correct. Could have offered them into evidence if you wanted to, couldn't you? If he wanted to, sure. And he didn't want to. Right. I think that that would have potentially waived his argument about the inappropriateness of the select video. There is no evidence in the record, the arbitrary decision that she relied on. It is not specific that she relied on them, Your Honor, but I think if the court finds that the procedure was inappropriate and that it should have led to a recusal, that would affect the entire decision. If there was a case every time a judge has an in-camera inspection of evidence that is not admitted, they would have to recuse themselves. I think the difference is... Not the law anywhere never has been. And you haven't got a case that stands for that proposition. No, but I think the critical difference being that one party or another asks for an in-camera inspection and agrees to it. Here, the judge, over both parties' objections, asked to review this videotape. There was no foundation laid for it. She wanted to review all the surveillance instead of what was offered into evidence. There might be a slender read, but you're saying that the judge, Sue Esponte, asked for the surveillance videos. Nobody tended it. Correct. All right, let me ask you another threshold question. Are you making any argument that the commission's ruling was against the manifest weight of the evidence? Yes, I think... You are? I think, ultimately, we ask that it be decided. Where did you make that argument? In the brief. I know there's an alternative claim that the arbitrator's failure to recuse would also be against the manifest weight of the evidence. Well, that's not an argument attacking the underlying decision. There is no argument that the findings of fact and conclusions of law reached by the arbitrator are either against the manifest weight of the evidence or wrong on a de novo standard. Right. It's either the error of the arbitrator considering information outside of the record. I'm interested in this argument because there are no cases that support your argument, so we could dispose of it on forfeiture, but it's a very, very interesting argument. And I don't know how to square this with a bench trial where a judge conducts an in-camera inspection. And you're out of the only distinction, I guess, the only distinction I can draw is that one of the other parties asked for the judge to inject themselves in that way. Here, neither party asked for the judge to inject themselves. Well, is there any cases that say that the judge doesn't correspond to you? There's something wrong with that? Well, I think that the nature of the administrative rule and the act confining the arbitrator to information contained within the record... That presupposes the arbitrator relied on information that wasn't within the record, and there isn't a scintilla of evidence in this record that she did. Well, I don't know that it necessarily has to be a reliance, Your Honor. I think when you talk about the arbitrator having knowledge of information on disputed issues outside the record, that that infects the whole process. Well, that would be the same argument you'd make for an in-camera inspection of documents that were not admitted. It would have to be the same. And second of all, who got prejudiced by this? Mr. Halloran did. Why would he get prejudiced by this in the event that these videos disclosed the same impediment that Mr. Halloran claimed that he had? You could have introduced them. In the event that they showed he didn't have that impediment, your opponent could have introduced them. Neither of you did. Well, I think the problem is, Your Honor, number one, without any foundation, there can be a question as to whether the person depicted is even Mr. Halloran. And as to the eight minutes that were shown... Counsel, let's take it easy. If you were shown those tapes, Mr. Halloran could have been shown those tapes by you. He could tell you whether it was him or not. Well, that's true, Your Honor. Of the eight minutes that were actually shown in trial, he questioned whether it was him but said that he thought it was. I think that's one issue. The other issue is from the testimony of the one investigator that did testify, there's certainly questions as to when he was actually being filmed and when he wasn't being filmed. Okay. But, Counsel, taking up Justice Hoffman's question in terms of prejudice, later in your brief, you acknowledge, implicitly acknowledge lack of prejudice because you argue, and this is a quote, failure to admit the totality of the surveillance video taken of Halloran creates a presumption that it most likely showed Halloran acting within his treating physician's restrictions. So you're basically arguing that what the trial judge, excuse me, what the arbitrator reviewed that you say shouldn't have been reviewed was video that was favorable to the claimant's case. How is that prejudice? I think the issue is that it has to be an all or nothing approach. So if there's only a select portion that's reviewed, I think that's unfair because it doesn't give the whole picture. The way it was done in this case where, yes, the arbitrator reviewed all the video, but then it's not contained within the record anywhere for the commission or any reviewing court to then look at, I think, is a fundamental problem in the procedure. I'm not sure how you're parsing this. Are you saying that the arbitrator reviewed all of the video but then in the decision did not rely on the parts that weren't offered into evidence? That appears to be the case from her decision. Well, is it indicated explicitly in any way? It's not indicated explicitly one way or another, I think. Now you're expanding on your argument. Let's go back to your original point. Your point was that if the judge sui sponte asked to review the tape in camera, that somehow is fundamentally different than the attorneys tendering the tape. But I think you have a distinction without a difference. What's the difference in the mind of the judge reviewing it, how the judge, he or she, came into possession of the tape? Because you're saying that now they have knowledge of some facts they wouldn't have otherwise had. It's the same in either case, isn't it? Whether or not the attorneys agree to give the judge the tape or the judge sui sponte, you're saying that the mental processes are somehow different of the trial judge. How can you possibly reach that conclusion? The effect is going to be the same in either case, isn't it? Well, I don't think the effect is the same because in the heart of our argument has always been that the eight minutes that were introduced is unfair to just do that selection. You need to hear, not only see those other videotapes, but hear from the investigators to find out when they decided to tape them. Let's take that position. Here's what happened in this case. They introduced the eight minute tape. The attorney from your office objected because it didn't contain all the videos that were taken of your client. The arbitrator cuts the baby and says, okay. Tells the respondent, produce all those videos. I want to see them and the petitioner's attorney has a right to see them. And if they benefit you, Mr. Petitioner, you can introduce them into evidence. And you didn't. So now the question becomes, how are you prejudiced? Well, I think there's a question as to whether trying to introduce other snippets would have been a waiver of the objection. Waiver of what objection? The objection to the eight minutes that were introduced. It would have cured the problem. You had it within your control to cure the issue if it was an issue. It's not just the video. It's the investigators who are going to lay a foundation for the video and talk about sneaking into apartment buildings and talk about when they decided to tape and when they didn't. You know, there was testimony potentially as to ex parte conversations that the investigator has with the petitioner. I think that full, if all these videos are going to be received into evidence, I think it's only fair that the full circumstances behind them also be put into evidence. And the way it was done instead is that there's eight minutes that goes into evidence and then an unspecified amount of time over a nine-month period that only the arbitrator gets to view. It wasn't only the arbitrator that got to view. I apologize. Stop saying that. I apologize. That the arbitrator reviewed without any further context or foundation. I'm going to go back to what I initially asked, which was what evidence is there that the arbitrator did review additional video that wasn't admitted. So the only thing that you have is her solicitation of counsel to submit video. Do you have anything in the record that counsel indicated, okay, I will provide this or copied you on a letter where video was provided to the arbitrator? What do you have showing that it actually was sent? Well, in addition to the arbitrator's order, you do have an agreement from counsel that he will produce it. And then when the case was reheard or the second hearing date, one of the objections the trial counsel interposed was that the arbitrator has viewed these other videos and there was no, either from the arbitrator or opposing counsel, there was no contrary fact interposed that, in fact, those videos had not been produced or reviewed. But Your Honor is certainly correct. There is no explicit statement from the arbitrator. I've received X, Y, and Z's videos and reviewed them. But I think it's still. You're all in on the issue of the surveillance video, right? You're not challenging the manifest weight. You're all in on the surveillance video. The issues surrounding the surveillance video are the sole issues. How did you answer the question that was initially asked of you? You know, this was not tried before some impressionable jury. Okay? This is before an experienced arbitrator. So I think Justice Holder asked you the question, how does your argument square with the well-settled rule that a judge is presumed to ignore incompetent, irrelevant evidence? I think that the problem here is that this is a different situation from that typical because the arbitrator now has this information, factual disputed information, other videos. And so you can't really unring that bell as opposed to where that presumption typically arises where there's just irrelevant evidence that's injected into the record. Isn't that a little bit of a stretch? Because the bottom line is in both instances the judge is hearing something that perhaps is objectionable. But the judge is presumed to call out what is relevant and admissible and what isn't. Right. And, again, I think the other difference being in that situation it's one party or another that at least attempts to inject this information into the trial court and then the trial court has to remove it. Yeah, but the effect on the person who's doing the examination is still the same, arguably, isn't it? You're complaining that the arbitrator ruled on some personal knowledge, if you phrased it, that they wouldn't otherwise have. That's precisely what happens in an in-camera, in any case, with the judge. They're hearing it. They decide what's relevant and isn't. So in that process aren't they arguably considering irrelevant prejudicial information that they don't allow to go to the other side? That certainly can't occur. So you're saying the judge, in that instance, if it's a civil case, the judge, we can presume, ignored it. But when the arbitrator, we can't presume that. It has to be your argument. Well, I think that the argument stems more from the fact that it comes from her sua sponte, over the objection of both parties. Mark, wait a minute. You say sua sponte, and it really isn't sua sponte. Their investigator testifies to the eight minutes. On cross-examination, he gets out of the investigator that there were other videos of the claimant. Your attorney makes an objection that the other videos have not been introduced into evidence, and therefore the eight minutes should not be. You open the door. The arbitrator turned around and said, okay, if you think that these other videos benefit your client, I'm going to take a look at these, and you're going to get to take a look at these. Turn them over, Mr. Respondent. The respondent does that. She gave you every opportunity in the world to introduce those videos if you thought they benefited your client. And you didn't do it. I think the issue is just that there's no foundation laid for those videos. So now the respondent has the burden to offer that evidence, and now the burden can shift to the petitioner. But they were never introduced into evidence, so there didn't have to be a foundation. You're the one that said there was more videos. You objected because there were more. They said here's the more. Take a look at it. Counsel, you'll have time also to reply. Thank you. Counsel, you may respond. Thank you. May it please the Court, Dan Wellner for defendant, ND Industries. Counsel? I take it you don't agree with everything he says, do you? I do not. I'd like to touch upon a couple points. The Court has brought up the manifest way issue, which Counsel has mentioned in his issues presented as a side note, but has not really argued. And it remains the defendant's position in this case that whatever, put your thumb over the video evidence, whether it's inadmissible or not inadmissible, this case, there's sufficient evidence in this case to hold the findings of the arbitrator and the commission. Well, if it were determined that the arbitrator did in fact rely on evidence that she gained outside the record of this case, forget for a minute whether an in-camera inspection qualifies, then in that particular case we'd reverse it whether it was against the manifest way of the evidence or not. Well, correct, but she did not rely on any evidence outside. Well, then let's get to the real issue in this case. The real issue in this case is did she do something improper by viewing the videos? And, you know, that's the real issue in this case. Tell us why she didn't do something improper. He's hanging his whole head on that issue. And first, tell us, did she view the video? We were requested to produce the video. The video was produced. What she reviewed is unknown from the record. She reviewed a couple of CDs. I was there. She reviewed a couple of the CDs from prior to the surveillance that was offered. So there was some viewing of surveillance. I don't know what was actually viewed. I don't know what was on the surveillance. That's the issue. So nobody does. So wouldn't we have to fill in some gaps in the evidence even to assume that she viewed it? Correct. Well, wait a minute. Your opponents, she did view it. You don't deny that in your brief anywhere. I don't deny that she viewed it. She viewed something. Because we produced the videos as she requested. You produced all the videos. Correct. And you don't deny his allegation that she reviewed them. Correct. Okay. So we'll assume for a moment that she did. Okay. So now what does that mean? It means that she viewed it. She made an in-camera inspection. She then looked to the parties to see if anybody was going to offer the evidence, and neither party wanted to offer those videos. The only video offered was the eight minutes that the doctor viewed. It is really as supplemental to his opinion. But are you telling me, I think I heard earlier, that's the only video that you objectively know was viewed? The eight minutes? The eight minutes from March of 2012. That's correct. Okay. That's the only one that apparently you were physically there and saw them being viewed? Correct. Okay. So you don't know if anything beyond that eight minutes was actually viewed, do you? Well, I know that when we convened in December, there were videos. I produced the videos, and there were videos viewed by the arbitrator briefly. But I don't know if the entirety of it was not viewed. How do you know this? I was present at the trial. Yeah, the eight minutes, right? Well, there's two things going on. There's the eight minutes that was offered, and then there's the, what he alleges are nine months, but were various days of surveillance that had occurred several months before the surveillance that was offered. And you saw the arbitrator view some of them? Correct. There was about a 10, 20-minute viewing. And I'm sorry, because I've read through your briefs. Where does that come from? Is that something outside the record that you're telling us? That is, yes. Why are you doing that? Well, I'm just being honest with what was viewed. Okay, we base our decision on what happened. And that's why I'm arguing off the record that there was, in my brief, I didn't argue that. Okay, but if you're telling us something outside the record, that's not proper. Well, what I'm telling you outside is in the record itself, the arbitrator, as counsel said, did acknowledge that there was, she viewed videos and then made a ruling to admit the video in the record. And I'm sorry if I'm being obtuse. I've asked this a couple of times, and you just suggest it again. It's in the record that the arbitrator acknowledged viewing surveillance video that was not admitted? It was not the arbitrator. It was the counsel that acknowledged that. The judge had viewed the video. His objection is that the judge had viewed the video. That's what the only evidence is. I don't understand how, through an objection, an attorney can create evidence of what the arbitrator did. Did the arbitrator confirm what the attorney said in the objection? She did not. Well, then the objection can't create a fact. You can't establish the admission of evidence by an objection, can you? No. Now, let's go back to his other fundamental position. He's saying that the act of the arbitrator reviewing the video in and of itself was prejudicial error. What specifically do you have to say in response to that, and what authorities can you cite to us that deals with that issue? It was not prejudicial error. Assuming she even viewed this surveillance, it was not prejudicial error because the, first of all, the commission did not rely on it. She did not rely on it in her decision. There's four and a half pages in the record of what she decided. She never mentioned the surveillance once. The doctor who actually viewed the surveillance that was offered had already made up his mind as far as issues of causation and TTD. So how viewing something, and the bigger point is, is if there was some kind of surveillance viewed months earlier, benefits were not in dispute at that point. Causation was not in dispute at that point. In essence, you've evolved into a two-part response. You're saying, A, it was not prejudicial error, and, B, you were saying is what we would refer to as harmless error, even if it was considered, in light of the totality of the evidence. Is that the essence of your position? That is the essence, yes. Okay. Thank you. Thank you, counsel. Counsel, you may reply. Your Honor, unless there's any other questions, I think everything's been set out in the briefs. The arbitrator did, in fact, indicate, I believe, that the video taken of the claimant by Filippello on March the 5th, 2012, shows the claimant walking and moving without any discernible problem. So to that extent, they did rely on the eight minutes. Absolutely. Oh, there's no question about that. Right. Okay. Great. Unless there's any other questions, I just ask for a reversal. I don't believe there are. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement and a written disposition shall apply.